*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TITAN WEALTH ADVISORS, LLC,

          Plaintiff/Counterdefendant-
Appellant/Cross-Appellee,

v

DONALD FAIRMAN, WENDY MASEN,
JENNIFER CONLEY, and HENRY CONLEY,

          Defendants/Counterplaintiffs/Third-
Party Plaintiffs-Appellees/Cross-
Appellants,

and

KEVIN VANDENHAUTE and CLARK HARRIS,

          Third-Party Defendants-
Appellants/Cross-Appellees.

UNPUBLISHED
July 13, 2026
9:12 AM

No. 368019
Oakland Circuit Court
LC No. 2021-189175-CB

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

Plaintiff/counterplaintiff Titan Wealth Advisors, LLC, and third-party defendants Kevin Vandenhaute and Clark Harris (collectively, the Titan parties) appeal as of right the judgment entered in favor of defendants/counterplaintiffs/third-party plaintiffs Donald Fairman, Wendy Masen, Jennifer Conley, and Henry Conley (collectively, defendants). Defendants cross-appeal as of right, but their cross-appeal is conditioned on this Court granting the Titan parties appellate relief. We affirm.

## I. FACTUAL BACKGROUND

Titan is a financial services firm located in Bloomfield Hills, Michigan. It is owned by Harris and Vandenhaute as equal partners. Defendants Fairman, Masen, and Henry Conley (collectively, the advisors) were employed by Titan as financial advisors. They were compensated

-1-

by commissions on investment products they sold to clients. Their employment contracts contained noncompete and nonsolicitation provisions that restricted their freedom to solicit Titan's clients after they resigned their employment. However, Fairman had an additional agreement with Titan, which enabled him to buy his "book of business," which would exempt his clients from the noncompete and nonsolicitation agreements. Fairman completed the installment payments in this arrangement, but did not continue to work for the requisite number of years to fulfill the contract. The advisors, Harris, and Vandenhaute, each held Series 6 General Securities Representative Licenses, which allowed them to sell basic investment products such as mutual funds and variable annuities. The advisors also held Series 7 General Securities Representative Licenses. The Series 7 licenses allowed them to sell more advanced investment products than the Series 6 licenses. These products included individual stocks and "illiquid securities," which are financial instruments that pay income, but are difficult to liquidate or cash out because they have no readily available secondary market.

Titan had a group-production affiliation agreement with Sigma Financial Corporation and Sigma Planning Corporation (collectively, "Sigma"). Sigma served as Titan's broker-dealer. The advisors were members of the production group and were required to sign the agreement. Harris was the group representative. Sigma paid commissions to the Titan parties by transferring them to a bank account that Harris held in his individual capacity. Harris then distributed commissions to the advisors. Sigma was also responsible for monitoring Titan's compliance with securities regulations.

In February 2021, one of Harris's clients e-mailed regarding his concerns about a poorly-paying illiquid security. These e-mails came to the attention of Sigma's compliance officer, John McClellan. Fairman also received a copy of the e-mail because he was listed on the client's account as the advisor who sold him the illiquid security. Relevant to the issues presented in this matter, defendants maintain that Harris completed the transaction by fraudulently using Fairman's Series 7 license and forging Fairman's signature. They further allege that Harris conducted other fraudulent Series 7 transactions and that these transactions jeopardized defendants' licensure and clients. Conversely, the Titan parties allege that Fairman was sufficiently involved in the transaction to comply with licensing regulations.

In response to the discovery of Harris's Series 7 transactions, Sigma terminated Harris's status as group representative and later terminated its affiliation with Titan. In April 2021, defendants resigned from Titan, purportedly because they believed that Harris's actions made Titan a disreputable firm. However, the Titan parties believed that defendants exaggerated the seriousness of Harris's actions as a pretext to resign their employment and violate the noncompete and nonsolicitation agreements. The Titan parties thereafter initiated this lawsuit against defendants, raising claims of breach of contract, breach of fiduciary duty, and related business torts. Defendants filed a counterclaim against Titan and a third-party complaint against Harris and Vandenhaute, also raising claims of breach of contract, breach of fiduciary duty, fraudulent inducement, civil conspiracy, and related claims.

Several of the parties' claims and counterclaims were either voluntarily dismissed or dismissed through summary disposition. The remaining claims proceeded to trial. Relevant to this appeal, the jury found that both Fairman and the Titan parties breached the contracts between them, but the Titan parties breached first. The jury awarded the Titan parties $554,355 in damages

and awarded Fairman no damages. The jury additionally found that, while Fairman did not breach his fiduciary duty to the Titan parties, the Titan parties breached their fiduciary duty to him. The jury thus awarded Fairman $130,000 in damages. With regard to fraudulent inducement, the jury found that the Titan parties omitted a material fact to Fairman, which Fairman relied on when he entered into contracts with the Titan parties. However, the jury found that he did not sustain any monetary damages in relation to that claim.

The jury next found that Henry Conley and the Titan parties both breached their obligations under Henry Conley's contract, but once again, the Titan parties breached first. The jury awarded the Titan parties $170,996 in damages and Henry Conley no damages. The jury found that Henry Conley did not breach his fiduciary duty to the Titan parties, but the Titan parties breached their fiduciary duty to him. The jury awarded him $25,000 in damages. With regard to fraudulent inducement, the Titan parties omitted a material fact to Henry Conley, which he relied on when he entered into contracts with the Titan parties. However, the jury awarded him no monetary damages.

The jury next found that neither Masen nor the Titan parties breached their obligations under their contract with Masen. Additionally, the jury found that Masen did not breach her fiduciary duty to the Titan parties, but they breached their fiduciary duty to her. The jury awarded Masen $40,000 in damages. With regard to fraudulent inducement, the jury found that the Titan parties omitted a material fact to Masen, which Masen relied on when she entered into contracts with the Titan parties. However, the jury found that she did not sustain any monetary damages. The jury additionally found that Masen did not engage in common-law conversion, statutory conversion, or tortious interference with a business relationship and that there was no civil conspiracy by any party. This appeal followed.

## II. ANALYSIS

## A. THE TITAN PARTIES' DIRECT APPEAL

## 1. BREACH OF FIDUCIARY DUTY

The Titan parties first argue that the trial court erred by denying their motion to dismiss defendants' claim for breach of fiduciary duty on summary disposition, and again erred in denying their motion for a directed verdict at trial. They also argue that the trial court erred by permitting witnesses to give testimony that amounted to expert or legal opinions on fiduciary duty. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The Titan parties moved for summary disposition under both MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact), but their argument addressed only the pleadings. "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). This issue will therefore be analyzed under MCR 2.116(C)(8). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

"A claim of breach of fiduciary duty sounds in tort." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020) (quotation marks and citation omitted). "To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Id*. A fiduciary relationship may arise "from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Vicencio v Ramirez, MD, PC*, 211 Mich App 501, 508; 536 NW2d 280 (1995). When a fiduciary relationship arises, the fiduciary has a duty to act for the principal's benefit in matters within the scope of the relationship. *Prentis Family Foundation v Barbara Ann Karmanos Cancer Inst*, 266 Mich App 39, 43; 698 NW2d 900 (2005). The existence of a fiduciary duty is a question of law. *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 20; 824 NW2d 202 (2012). However, "whether there exists a confidential relationship apart from a well defined fiduciary category is a question of fact." *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler, PC*, 107 Mich App 509, 515; 309 NW2d 645 (1981).

Michigan caselaw has not expressly established whether a fiduciary duty may arise in an employment relationship. In *Bradley v Gleason Works*, 175 Mich App 459; 438 NW2d 330 (1989), this Court addressed the issue in the context of a plaintiff employee's argument that the statute of limitations was tolled by the defendant employer's fraudulent concealment of the plaintiff's cause of action. *Id*. at 461-465. There, the plaintiff injured his hand in a machine while performing his job. *Id*. at 461. The plaintiff argued that the statute of limitations for his claim against the defendant employer was tolled because the defendant concealed correspondence from the machine's manufacturer informing the employer of safety defects in the machine that eventually injured the plaintiff. *Id*. at 460-461. This Court stated that fraudulent concealment to toll the statute of limitations "must be manifested by an affirmative act or misrepresentation," except when "there is an affirmative duty to disclose where the parties are in a fiduciary relationship." *Id*. at 462 (quotation marks and citations omitted). Accordingly, "the issue boil[ed] down to determining whether a fiduciary relationship existed between the parties such that [the defendant] was under an affirmative duty to disclose the existence of the letters to plaintiff." *Id*. at 463. The Court held:

> While common law principles might be said to have required [the defendant] to warn, instruct, and inform its employees as to all dangers incident to the work which were not discoverable from ordinary observation by an inexperienced person, that is a far cry from requiring [the defendant] to inform all of its employees about the existence of possible safety devices. [*Id*.]

The Court concluded that there was "no sort of fiduciary relationship" that required the defendant to disclose the correspondence; thus there was no fraudulent concealment tolling the statute of limitations. *Id*. at 464. However, this holding was a rejection of a specific fiduciary duty relative to the fraudulent concealment claim, rather than a broad negation of a fiduciary relationship between employer and employee.

The Titan parties rely on *Delphi Auto PLC v Absmeier*, 167 F Supp 3d 868, 884 (ED Mich, 2016),[1] in which the court stated: "The general rule is that the employer-employee relationship does not give rise to a fiduciary relationship unless the employee is a high-level employee, or if there is a specific agency relationship." In *Delphi Auto*, the plaintiff employer alleged that the defendant employee breached a fiduciary duty to the Plaintiff by terminating his employment and accepting employment with the plaintiff's competitor, and by misappropriating confidential information. *Id*. at 873. After stating the general rule quoted above, the court declined to address whether the circumstances of the parties' relationship gave rise to a fiduciary duty. *Id*. at 884. The court ultimately "[a]ssum[ed], without deciding," that the parties had a fiduciary relationship, but dismissed the claim because the plaintiff failed to establish the elements of breach of duty and proximate cause of damages. *Id*. at 884-885.

Defendants made the following allegations in their counterclaim and third-party claim against the Titan parties:

> 211. As co-owners of Titan and employers of Masen, H. Conley, and Fairman[, the Titan parties] were placed in positions of trust and confidence with regard to funds due to and attributable to their production from Sigma, which gave rise to a fiduciary duty to refrain from misusing their positions to misappropriate these funds for their collective benefit or the benefit of Titan.

> * * *

> 213. Harris and Vandenhaute's actions in misappropriating commissions and other compensation due to Masen, H. Conley, and Fairman and in misusing their names, likenesses, and credentials constitutes a breach of these fiduciary duties.

Defendants further explained in their response to the Titan parties' motion that the Titan parties retained control and management over the commissions attributable to defendants' transactions. This control gave rise to the Titan parties' fiduciary duty to ensure that defendants received their rightful commissions. Defendants argued that the Titan parties violated this duty by engaging in misconduct that damaged defendants' business reputations and prospects.

These allegations were sufficient for defendants' breach-of-fiduciary-duty claim to withstand a motion for summary disposition under MCR 2.116(C)(8). They alleged more than the existence of an employment relationship; they alleged that the Titan parties received commission payments that included amounts to which the advisors were entitled. This placed the Titan parties in a position of trust and confidence because it was up to them to ensure that the commissions were properly distributed. This was not an ordinary employment relationship in which the employer paid a set salary to employees. Instead, the employment relationship involved receiving payments that the advisors earned out of money received from Sigma, and then passed to Harris. The trial

---

[1] "Although caselaw from the federal circuits and federal district courts is not binding on this Court, it may be considered for its persuasive value." *Johnson v Vanderkooi*, 502 Mich 751, 765 n 6; 918 NW2d 785 (2018).

-5-

court therefore did not err in denying the Titan parties' motion for summary disposition with respect to the breach-of-fiduciary-duty claim.

This analysis also applies to the trial court's denial of the Titan parties' motion for a directed verdict. We review de novo the trial court's decision on the motion for a directed verdict. *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 550; 965 NW2d 121 (2020). "A motion for a directed verdict challenges the sufficiency of the evidence." *Id*. The motion should be granted when the evidence, viewed in the light most favorable to the nonmoving party, entitles the moving party to judgment as a matter of law. *Id*. "If reasonable persons could honestly reach different conclusions regarding whether the nonmoving party established a claim, the motion for a directed verdict must be denied, with the case being resolved by the jury." *Id*. Here, the Titan parties argue that there was no fiduciary duty arising from the group production agreement because it was made in the context of the employment relationship. As we stated in the previous analysis, Michigan caselaw does not comprehensively preclude a fiduciary relationship between employers and employees. The trial court therefore did not err in denying the Titan parties' motion for a directed verdict.

The Titan parties additionally argue that the trial court erred in permitting witness testimony regarding fiduciary duty. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Kuebler v Kuebler*, 346 Mich App 633, 654; 13 NW3d 339 (2023). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *In re Piland*, 336 Mich App 713, 733; 972 NW2d 269 (2021). We review de novo questions of law, including questions related to the interpretation and application of statutes and court rules. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "In civil cases, evidentiary error is considered harmless unless declining to grant a new trial, set aside a verdict, or vacate, modify, or otherwise disturb a judgment or order appears to the court inconsistent with substantial justice." *Campbell v Human Servs Dep't*, 286 Mich App 230, 246; 780 NW2d 586 (2009).

The Titan parties argue that the trial court wrongly permitted defendants to question Harris, Fairman, and Masen about fiduciary duty, resulting in these lay witnesses giving expert opinions. A lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." MRE 701.[2] These witnesses all had experience in the financial services industry. They all worked for Titan. They were able to form opinions about the parties' obligations and duties with respect to Titan's business. However, the implied premise of the Titan parties' argument is that these witnesses were stating a legal opinion, thus creating a risk that jurors would be influenced by these witnesses' opinions instead of following the trial court's instructions to decide for themselves whether a fiduciary duty was owed based on the evidence.

Vandenhaute and Fairman stated opinions about fiduciary duty generally. Harris implied that he agreed that he had a fiduciary duty to the advisors. Masen replied affirmatively to a specific

---

[2] The Michigan Rules of Evidence were revised effective January 1, 2024. All references to the Rules of Evidence in this opinion refer to the version of the rules in effect at the time of the trial.

question about Harris's duty to the advisors. This testimony directly or indirectly expressed legal opinions. Witnesses "may not testify with regard to domestic law because it is within the exclusive responsibility of the trial judge to find and interpret the applicable law." *Thorin v Bloomfield Hills Bd of Ed*, 203 Mich App 692, 704; 513 NW2d 230 (1994). However, if the opinion is "consistent with the applicable law and the trial court's jury instructions, the error is harmless." *Id*. Additionally, "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Zaremba Equipment, Inc v Harco Nat Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013) (quotation marks and citation omitted). Here, the trial court instructed the jury on the elements of breach of fiduciary duty, including the circumstances that establish a fiduciary duty in a business relationship. The Titan parties do not argue that the instructions on breach of fiduciary duty were erroneous. This instruction was sufficient to inform the jurors that they must make their own finding as to the existence of a fiduciary duty and not simply accept the witnesses' opinions. Allowing the jury verdict to stand is not inconsistent with substantial justice. *Campbell*, 286 Mich App at 246.

## 2. BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The Titan parties raise multiple claims of trial error relating to the trial court's application of the law governing the implied covenant of good faith and fair dealing in relation to employment contracts. These claims are based on the Titan parties' argument that defendants' breach-of-contract claim was not based on a breach of any term of the contract, but instead was based on an alleged breach of the implied covenant of good faith and fair dealing. The Titan parties point out that the implied covenant of good faith and fair dealing does not apply to employment contracts. They contend that they could not have committed any breach of the implied covenant in this matter. The Titan parties additionally argue that the trial court erred by requiring the jury to find which party committed the first breach if it found that both parties breached, and in denying the Titan parties' motion for a directed verdict. We disagree.

"To preserve an instructional issue for appeal, a party must request the instruction before instructions are given and must object on the record before the jury retires to deliberate." *Heaton v Benton Constr Co*, 286 Mich App 528, 537; 780 NW2d 618 (2009). A party's expression of satisfaction with the instructions constitutes waiver and extinguishes any error concerning the instructions. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 224; 755 NW2d 686 (2008). Objections to a jury verdict form are subject to the same preservation procedure. See *Jimkoski v Shupe*, 282 Mich App 1, 8-9; 763 NW2d 1 (2008).

The Titan parties' counsel expressed satisfaction with the jury instructions, but separately objected to a question on the verdict form regarding the first breach. Theoretically, a party might be able to approve of jury instructions and yet reserve a distinct objection to the verdict form. However, the Titan parties' objection to the verdict form cannot logically stand as distinct from the instructions. This issue is therefore unpreserved. In civil cases, unpreserved claims are considered waived on appeal. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfr*, 347 Mich App 280, 289; 14 NW3d 472 (2023). "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and

the facts necessary for its resolution have been presented." *Id.* at 289-290 (quotation marks and citations omitted).

Generally, claims of instructional error are reviewed de novo. *Jimkoski*, 282 Mich App at 9. "The trial court's jury instructions must include all the elements of the plaintiffs' claims and should not omit any material issues, defenses, or theories of the parties that the evidence supports." *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). "Instructions not supported by the evidence should not be given." *Id.* "If, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury, no error requiring reversal occurs." *Id.* "Reversal based on instructional error is only required where the failure to reverse would be inconsistent with substantial justice." *Id.* at 211-212.

The trial court's oral jury instructions included directives on the "breach of implied agreement by the Titan parties to exercise good faith in performance of its contract or contracts" with the advisors. The court defined "[g]ood faith performance or enforcement" as "faithfulness . . . to an agreed common purpose in consistency with the justified expectations of the other party to the contract." The court likewise defined "[g]ood faith" as "the opposite of bad faith," with "bad faith" defined as "a design to mislead or deceive another or neglect to or refuse to fulfill some duty or contractual obligation not prompted by honest mistake as to one's rights or duties." As previously noted, the Titan parties waived their claims of error with respect to the jury instructions and objected only to the verdict form. Logically, the Titan parties cannot accede to the good-faith covenant instruction while objecting to the first-to-breach question on the verdict form when the verdict form objection is rooted in disagreement with the good-faith covenant instruction.

In any event, the trial court did not err in accepting defendants' argument that they could claim breach of the group production agreement based on an implied-covenant breach. "A party claiming a breach of contract must establish (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Dunn v Bennett*, 303 Mich App 767, 774; 846 NW2d 75 (2014) (quotation marks and citation omitted). However, a contracting party "who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (quotation marks and citation omitted). This first-breach rule only applies if the initial breach was "substantial." *Id.*

This Court has acknowledged authorities holding "that the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v United of Oakland, Inc*, 193 Mich App 146, 152; 483 NW2d 652 (1992) (quotation marks and citation omitted). When a contract allows a party discretion in the manner of performing contractual duties, this discretion must be exercised honestly and in good faith. *Ferrell v Vic Tanny Int'l, Inc*, 137 Mich App 238, 243; 357 NW2d 669 (1984). However, this Court has also found that "Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing[.]" *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 476; 666 NW2d 271 (2003). This Court has also "been unwilling to recognize a cause of action for breach

-8-

of an implied covenant of good faith and fair dealing in cases involving at-will employment relationships." *Hammond*, 193 Mich App at 152.

The group production agreement did not govern the terms of the employment relationship, but instead governed the distribution of Sigma's commission payments. Harris's use of the group production agreement to pay himself commissions that he earned by using the advisors' Series 7 licenses impaired the advisors' ability to benefit from the group production agreement. The jury could therefore find that he acted in bad faith and breached the implied covenant. Furthermore, by disrupting Sigma's relationship with Titan, Harris jeopardized the advisors' ability to rely on Sigma's services as broker-dealer. On this record, the trial court did not err in allowing the jury to decide the factual issue of whether the Titan parties breached the contracts and whether Titan was the first party to breach. Accordingly, the Titan parties were not entitled to a directed verdict on Fairman's and Henry Conley's breach-of-contract claims.

### 3. FRAUDULENT INDUCEMENT

The Titan parties next argue that they were entitled to a directed verdict on defendants' claim of fraudulent inducement. They contend that defendants' counterclaim stated a claim for fraudulent inducement, but not for inducement by omission or silent fraud. The Titan parties thus argue that defendants' fraudulent inducement claim must fail as a matter of law because they did not move to amend their claim to conform to the evidence. We disagree.

To establish a prima facie case of fraudulent inducement, the moving party must show:

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 161; 742 NW2d 409 (2007) (quotation marks and citation omitted).]

At trial, defendants did not present evidence that the Titan parties made false material representations. Instead, they asserted that the Titan parties should have disclosed Harris's misuse of other advisors' Series 7 licenses. None of defendants' witnesses testified that Harris or Vandenhaute made a particular representation that induced them to accept employment.

"Silent fraud, also known as fraudulent concealment, acknowledges that suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud." *Maurer v Fremont Ins Co*, 325 Mich App 685, 695; 926 NW2d 848 (2018). The elements of silent fraud are: (1) the defendant suppressed a material fact, (2) the defendant had the duty to disclose the fact, and (3) the plaintiff relied on the omission to his or her detriment. *Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012). "Silent fraud is essentially the same [as fraudulent misrepresentation] except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Id*. at 193. "Such a duty may arise by law or by equity; an example of the latter is a buyer making a direct inquiry or expressing a

particularized concern." *Id*. Claims for fraud have a "heightened pleading standard." *State ex rel Gurganus v CVS Caremark Corp*, 496 Mich 45, 63; 852 NW2d 103 (2014).

Defendants argue that their pleadings were sufficient to support a claim of silent fraud under Michigan's notice-pleading rules. "All that is required is that the complaint set forth 'allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]' " *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011), quoting MCR 2.111(B)(1). Defendants alleged in their counterclaim:

> 51. In early 2021, the Counter-Plaintiffs/Third-Party Plaintiffs discovered systematic, repeated fraud and workplace misconduct committed by Clark Harris and covered up by his business partner Kevin Vandenhaute that had damaged Counter-Plaintiffs/Third Party Plaintiffs, their clients, and Titan's clients.

> 52. This matter first came to Fairman's attention that one of Titan's co-owners, Clark Harris, had utilized his licensing credentials and forged his signature on paperwork necessary to sell a highly illiquid investment ("Illiquid Investment") to a client which Harris was not licensed to sell.

> 53. The chain of events prompting this discovery was initiated when the affected client reached out [to] Harris in February of 2021 to inquire into the status of his investments and question the loss of value that he had experienced from the Illiquid Investment.

Under the heading for Count II, Fraudulent Inducement, defendants alleged:

> 169. Titan and its owners, Harris and Vandenhaute, represented by their statements and conduct that they would conduct business in a lawful manner and consistent with FINRA regulations.

> 170. They further represented that they would not misuse employee licensure, forge documents, and otherwise commit violations of applicable laws and regulations governing the sale of securities and/or cause other employees to commit such violations.

> 171. At the time the representations were made, they were false or made recklessly, without knowledge of their truth and as a positive assertion, and were made with the intent that the Counter-Plaintiffs/Third-Party Plaintiffs would rely on them.

Defendants alleged that, if they had known the Titan parties' representations were false, they would not have entered into any of the employment agreements or related agreements.

Defendants contend that these allegations, read jointly, give notice that the fraudulent inducement claim can be based on material omissions as well as on misrepresentations. The statements that defendants "discovered" misconduct, that the misconduct "first came to Fairman's attention," and that the client's inquiry prompted the "discovery" all suggest that defendants learned about Harris's alleged misconduct after they had already accepted employment. However,

reading a valid claim for silent fraud from these allegations stretches the notice-pleading standard beyond reason. Moreover, these pleadings fail to satisfy the requirement that fraud must be pleaded with specificity. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008). These allegations do not allege that defendants relied on the absence of disclosures when they accepted employment. *Alfieri*, 295 Mich App at 193. These pleadings also do not establish that the misconduct occurred before defendants made the decision to join Titan, or that the Titan parties had a duty to disclose Harris's conduct. By allowing defendants' defectively-pleaded silent fraud claim to proceed to the jury, the trial court essentially sua sponte amended defendants' counterclaim by adding a counterclaim that defendants could have, but did not, raise themselves. In general, sua sponte amendments are not permissible. *City of Bronson v American States Ins Co*, 215 Mich App 612, 619; 546 NW2d 702 (1996). However, under MCR 2.118(C)(1),

> [w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.

The Titan parties impliedly consented to defendants' pursuit of a claim of fraudulent inducement by silent fraud when they consented to jury instructions and a verdict form that required the jury to find whether the Titan parties omitted a material fact to the advisors. Admittedly, defendants failed to move to amend their complaint, despite having ample opportunity to do so. Given that the sole basis of the Titan parties' directed verdict motion was defendants' failure to amend their counterclaim, the trial court acted consistently with MCR 2.118(C)(1) when it denied the motion.

The Titan parties also argue that the denial of directed verdict allowed defendants "to present evidence and testimony for those claims and the jury was instructed and invited to render verdict and damages in favor of Appellees." However, the Titan parties do not cite any evidence that defendants would not have presented if the fraudulent inducement claim had been dismissed. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims . . . ." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (quotation marks and citation omitted). Moreover, a motion for a directed verdict tests the sufficiency of evidence presented at trial, and is therefore made after the close of proofs. *Barnes*, 334 Mich App at 550. The trial court's denial of the motion for a directed verdict therefore had no effect on the evidence heard by the jury.

## 4. CIVIL CONSPIRACY

The Titan parties also argue that they were entitled to summary disposition and a directed verdict in relation to defendants' civil conspiracy claim. We disagree.

The jury found that defendants failed to prove their civil conspiracy claim. This Court held in *Willoughby v Lehrbass*, 150 Mich App 319, 329-330; 388 NW2d 688 (1986), that a trial court's erroneous dismissal of a claim was harmless because the jury's verdict on other claims indicated that the plaintiff would not have prevailed on the dismissed claim. By analogy, a trial court's verdict of no cause of action renders harmless an erroneous denial of a directed verdict. We

therefore decline to analyze the merits of the Titan parties' civil conspiracy claim, because any error in submitting these claims to the jury was harmless.

### 5. MOTION IN LIMINE REGARDING DAMAGES

Next, the Titan parties argue that the trial court erred in denying their motion in limine to exclude defendants' testimony regarding their damages. The substance of their argument is that defendants failed to sufficiently respond to the Titan parties' interrogatories and requests to produce documents in discovery. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Kuebler*, 346 Mich App at 654. A trial court's decision on a motion regarding discovery is reviewed for abuse of discretion. *Tolas Oil*, 347 Mich App at 301.

The trial court denied the Titan parties' motion in limine because the parties were still disputing which documents had been produced and which documents the opposing parties had in their possession. The trial court advised the parties "to confer with regard to what has been provided, what has been previously produced, if you've had them in your possession." Until the parties attempted to do so, the Titan parties' motion was premature. The trial court clarified that it was not taking the motion under advisement. However, the Titan parties would be able to "renotice" the motion if the attorneys did not resolve the matter. The Titan parties did not resubmit the motion.

MCR 2.302(A)(1) provides that each party "must, without awaiting a discovery request, provide to the other parties" information regarding that party's claims, including "a computation of each category of damages claimed by the disclosing party, who must also make available for inspection . . . the documents or other evidentiary material . . . on which each computation is based . . . ." Defendants stated that their damages were based on wrongfully withheld commissions, which could be determined from Titan's own business records. The Titan parties found defendants' initial disclosures inadequate. They were also dissatisfied with defendants' responses to their interrogatories and request for production of documents.

The Titan parties' motion in limine to exclude testimony regarding damages was essentially a motion to penalize defendants by disallowing monetary damages. An order precluding evidence of monetary damages would, in effect, amount to a dismissal of defendants' counterclaims for damages. "Severe sanctions such as default or dismissal are predicated on a flagrant or wanton refusal to facilitate discovery that typically involves repeated violations of a court order." *Swain v Morse*, 332 Mich App 510, 518; 957 NW2d 396 (2020). The trial court's finding that it was "premature" to consider such a drastic sanction is consistent with this principle, and was therefore not an abuse of discretion. Furthermore, the trial court did not deny the motion with prejudice. It specifically allowed the Titan parties to bring the motion again if defendants failed to cooperate with them in identifying documents in support of defendants' claims. The Titan parties did not avail themselves of this opportunity. Thus, the Titan parties' arguments as to the motion in limine and the admission of damages testimony at trial lack merit.

## 6. JUDICIAL BIAS

The Titan parties argue that the trial court showed bias against them and in favor of defendants. We disagree.

Generally, to preserve a claim of judicial bias, a party must make a motion in the trial court to disqualify the judge under MCR 2.003. See *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). The Titan parties did not move for a mistrial or disqualification of the judge. They likewise did not seek any other relief pertaining to their claim that the trial court showed bias against them and favoritism toward defendants. Accordingly, this issue is not preserved. However, we "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Tolas Oil*, 347 Mich App at 289-290. The question of whether judicial misconduct deprived a party of a fair trial is a constitutional-law question subject to de novo review. *In re Estate of Susser*, 254 Mich App 232, 236-237; 657 NW2d 147 (2002).

The trial court has substantial discretion in controlling courtroom proceedings. MRE 611(a) provided, at the time of trial:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

The "mode and order of admitting proofs and interrogating witnesses rests within the discretion of the trial court." *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 616; 792 NW2d 344 (2010) (quotation marks and citation omitted). The trial court is also required to maintain impartiality. Due process requires that an unbiased and impartial decisionmaker hear and decide a case. *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). "A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*. "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *In re LT*, 342 Mich App 126, 141; 992 NW2d 903 (2022) (quotation marks and citation omitted). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. (quotation marks and citation omitted).

Under MCR 2.003(C)(1)(b), grounds are present for disqualification if

> [t]he judge, based on an objective and reasonable perception, has either (*i*) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009) or (*ii*) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

"[J]udicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (quotation marks and citation omitted). "Comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality." *Id*.

We have reviewed the instances that the Titan parties allege demonstrate judicial bias. We are not persuaded that the trial court evinced bias in favor of defendants or against the Titan parties. Most of the cited instances suggest either that the trial court was genuine in its efforts to fairly adjudicate the numerous minor controversies that arose in this complex, highly contentious case. For example, the Titan parties take issue with the court's decision to postpone trial because McClellan's wife was facing a medical crisis. In that instance, the trial court was merely trying to accommodate a witness who was caught in unfortunate circumstances beyond his control.[3] With respect to the instances of the trial court "assisting" defense counsel, the court's interventions were intended to avoid delays and to keep the trial focused on the evidence rather than on the attorneys' skill in managing the minutiae of trial practice. We therefore conclude that the Titan parties' claim of judicial bias is without merit.

## 7. MOTION PRACTICE

The trial court advised the parties that it would hear directed verdict motions after it instructed the jury. The Titan parties' counsel expressed concerns that the jury instructions might need modification if the court granted their motion only partially. The Titan parties did not, however, object to the court's decision. They now argue that they were prejudiced by the court's decision. We disagree.

This issue was not preserved at trial, and therefore may be considered only "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Tolas Oil*, 347 Mich App at 289-290.

"A trial court has the inherent authority to control its own docket." *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016); see also MCR 2.513(B) (requiring the trial court to "control the proceedings during trial . . . ."). This authority includes the court's power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Baynesan*, 316 Mich App at 651 (quotation marks and citation omitted). The Titan parties do not clearly explain why the trial court's scheduling of the directed verdict motions after jury instructions was an unreasonable or unfair choice. They argue that the instructions and verdict form likely confused the jury, but there is no apparent reason why this would be true. The trial court's denial of the directed verdict motion meant that the jury would have had to hear all the

---

[3] Frankly, we are disappointed that the Titan parties would even raise this issue. Extending professional courtesy costs nothing, and in no way impairs a party from pursuing lawful claims. The fact that the trial court extended grace in a time of medical hardship is in no way indicative of favoritism. It is the decent, human thing to do.

instructions and answer all questions on the verdict form if the Titan parties had been allowed to present the motion earlier. Accordingly, the Titan parties' argument must fail.[4]

### B. DEFENDANTS' CROSS-APPEAL

Defendants state that our need to address their cross-appeal is conditioned on our resolution of the Titan parties' appeal. We have denied appellate relief to the Titan parties. It is therefore unnecessary to address defendants' cross-appeal, and we decline to do so.

Affirmed.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick

---

[4] The Titan parties' brief includes additional arguments that were not included in their statement of questions presented. "An issue not contained in the statement of questions presented is waived on appeal." *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004). We therefore decline to address these claims.